Simons, J.
(dissenting). The majority concludes that "the doctrine of preindemnification” does not apply in these actions. The contracting parties were, however, free to make any bargain they chose unless it was illegal or contrary to public policy. The insurers here claim that the parties agreed the owner’s insurance (purchased by the contractor) was to serve as the owner’s indemnity if a claim arose in which the owner was vicariously liable for the contractor’s fault. The parties were free to make that agreement if they chose to do so and the only question remaining is whether they did. In my view, a question of fact is presented on that issue and the cases *297 should be remanded for a factual determination of whether the owners waived their common-law right to be indemnified.
My primary disagreement, however, is with the majority’s conclusion that the antisubrogation rule prohibits subrogation in these cases. Relying on fears of "potential conflicts of interest”, the majority prohibits the insurers from spreading the loss among the contractors’ various insurers, though all have been paid premiums to cover the losses at issue here.
Nearly 70 years ago, our Court stated: "It is so well settled as not to require discussion that an insurer who pays claims against the insured for damages caused by the default or wrongdoing of a third party is entitled to be subrogated to the rights which the insured would have had against such third party for its default or wrongdoing. This right of subrogation is based upon principles of equity and natural justice” (Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co., 240 NY 37, 47). That right, so firmly embedded in our equitable jurisprudence and case law, should be abrogated only under compelling circumstances. When we have decided to limit it, we have proceeded cautiously, narrowly defining the proper rule. Thus, in Hartford Acc. & Indem. Co. v Michigan Mut. Ins. Co. (61 NY2d 569), we stated that the antisubrogation rule applies only when a single policy covers both insureds. That rendering of the antisubrogation rule is sound. It broadly recognizes the right to subrogation yet limits the right when the insurer’s conflict of interest is most apparent and legal action by the insurer against the insured is likely to undermine the coverage purchased by the insured.
In each of the three cases now before us, the common insurer has issued two policies, one covering the owner and one covering the contractor. The premiums for the two policies differed substantially to reflect the actuarial assessment of the potential liability of the insured for the risks covered by each policy. Unless Hartford is no longer good law, it should govern and the antisubrogation rule should not bar the insurers’ litigation against the contractors. I find no support for the majority’s statement that Hartford merely "alludes to” the antisubrogation rule (majority opn, at 295, n 4). Indeed, the "single policy” limitation of the antisubrogation rule was essential to our decision in Hartford, and if it is no longer good law, the majority should say so and explain why.
I would find that these cases are governed by Hartford and conclude that the antisubrogation rule is not applicable. The *298 circumstances presented by these cases do not provide compelling reasons to cut back further on the equitable right to subrogation and doing so shifts the losses away from the primary tortfeasors.
The majority justifies extending the prohibition to these cases because a "potential conflict of interest” exists (majority opn, at 295 [emphasis added]). That concern is unfounded on the facts presented. While in form the insurers are suing their own insured, and are therefore on both sides of the lawsuits, in reality they are bringing the suit to reach other insurers because in each case the contractor has additional insurance, issued by insurers other than the subrogees, which may cover the loss. Thus, the subrogees are not seeking to merely transfer assets from one of their pockets to another or even to get the contractor to pay for the loss out of its own pocket; they are trying to fully allocate the loss among those insurers who have undertaken to cover the risk of the contractor’s primary negligence.
Moreover, the possibility of conflict is more imagined than real, for as a practical matter an insurer has little incentive to seek subrogation against its own insured if it must shoulder the loss regardless of which party prevails. But here the contractor’s other insurers are the real parties in interest, and their presence and adverse interests assure that the issues will be fully litigated, making the action an appropriate vehicle for determining how the loss is to be spread among the insurers. The majority’s rule forecloses that allocation of loss, however, and assigns the loss solely to one insurer, no matter what the parties and insurers contemplated and no matter what the various insurance contracts dictate.
It is difficult to find any other grounds in these cases to warrant barring subrogation. The fact that both the owners’ and the contractors’ policies cover the same risk does not justify a departure from Hartford. The courts are regularly confronted with similar cases of "potential conflicts”, cases in which the same insurer covers both parties involved in an automobile accident, for example. The insurer has an independently enforceable contractual obligation to defend each party in such cases and the matter is handled simply by requiring that different counsel be appointed for each party, thereby obviating any conflict and assuring vigorous representation for both sides.
Nor is a conflict created because one party paid for both *299 policies. The duty to defend is owed to the insured, not the purchaser. Indeed, the majority’s rule, as far as one can tell from the writing, would apparently allow subrogation if the contractor bought policies for the owner and itself from two different carriers.
It may well be that subrogation should be prohibited in some instances not covered by the Hartford rule — for instance, when the contractor is not insured by others. In such cases, a real conflict of interest may exist, the insureds may face out-of-pocket liability for risks they assumed to be covered by their insurance purchases, and a broadening of Hartford’s antisubrogation rule may be justified. But that case is not before us today. In each of these cases, there are two separate insurance policies and adverse parties able and willing to litigate fully the issues arising from an action premised on subrogation. The need for subrogation is apparent because the owner’s insurer by suing the contractor, which it also insures, is not merely suing itself, it is seeking to allocate the owner’s loss among all insurers who have sold policies to the contractor. The subrogee may legitimately ask them as insurers of the party primarily liable to share in the loss.
Accordingly, I dissent and would vote to reverse the orders of the Appellate Division in all three cases.
Judges Titone, Hancock, Jr., and Levine concur with Chief Judge Kaye; Judge Simons dissents in a separate opinion in which Judges Bellacosa and Smith concur.
In North Star Reins. Corp. v Continental Ins. Co.: Order affirmed, with costs.
In Valentin v City of New York and Prince v City of New York: Order affirmed, with costs, and certified question answered in the affirmative.